UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In the Matter of an Arbitration Between:<br><br>PT SUMOHADIWIDJOJO,<br><br>　　　　Applicant<br>　　　　(Respondent below)<br><br>and<br><br>BSB RESIDUAL ASSETS TRUST,<br>BSB TRUST COMPANY, LTD., Trustee,<br><br>　　　　Respondent<br>　　　　(Claimant below).<br><br>CITIZENS BANK<br><br>　　　　Trustee | CIVIL ACTION NO. 04 12646 NG<br><br>MEMORANDUM IN SUPPORT OF RESPONDENTS' MOTION TO VACATE OR REDUCE <u>EX</u> <u>PARTE</u> ATTACHMENT |

## INTRODUCTION

Respondents BSB Residual Assets Trust and BSB Trust Company, Ltd., Trustee, (collectively "BSB") have moved to vacate or reduce the <u>ex parte</u> attachment issued in favor of Applicant PT Sumohadiwidjojo ("PTSW") against a bank account in the name of BSB at Citizens Bank. The $388,000 attachment should be vacated or reduced because, among other reasons:

　　1.　　The application to enforce a Singapore arbitration award ("Award") is premature because the arbitral tribunal ("Tribunal") did not determine the amount of legal costs, expenses, and disbursements of the arbitration ("costs") that PTSW is entitled to recover. The Tribunal directed that if the parties failed to agree on such costs, the Registrar of the Singapore International Arbitration Centre ("SIAC") should determine them. As of this date, the parties

have not agreed to the amounts of such costs nor has SIAC determined the amount that PTSW is entitled to recover.

2. Under the 1998 Loan Agreement between BSB and PTSW ("Loan Agreement"), BSB is entitled to set off any obligation on its part to pay legal fees against PTSW's multimillion dollar unpaid loan obligation to BSB.

3. BSB is entitled to assert a counterclaim against PTSW for the full amount of PTSW's unpaid obligation under the Loan Agreement, and there is a substantial likelihood that BSB would prevail in an amount greater than PTSW's claim here.

4. The ex parte attachment threatens BSB's ability to defend itself by freezing BSB's only liquid assets at a time when PTSW's failure to pay its debt obligations to BSB has deprived BSB of its only source of income.

## BACKGROUND FACTS

The dispute between BSB and PTSW arises out of a purchase and sale transaction relating to certain economic rights and interests in the Mezzanine Floor of the S. Widjojo Centre in Jakarta, Indonesia. After several years of negotiations, on August 11, 1997, BSB agreed to sell its rights to the Mezzanine Floor to PTSW and PTSW agreed to buy BSB's rights to the Mezzanine Floor. A copy of the Purchase and Sale Agreement is attached as Ex. 1. See Aff. of Michael Irwin at ¶ 5.

In February 1998, BSB and PTSW implemented their Purchase and Sale agreement through a series of integrated agreements. BSB and PTSW agreed to a transfer of the rights to the Mezzanine Floor in exchange for a purchase price of $2,915,040. See Transfer Agreement, copy attached as Ex. 2 at Articles 1 and 2. BSB agreed to lend PTSW $3,060,000, including the $2,915,040 purchase price for the rights to the Mezzanine Floor, and PTSW agreed to make principal and interest payments to BSB, evidenced by a Loan Agreement, copy attached as Ex. 3.

-2-

The loan was secured by a Deed of Security Rights over Land, the equivalent of a mortgage (the "Mortgage"), copy attached as Ex. 4. Upon closing of the 1998 agreements, BSB transferred its principal asset, rights to the Mezzanine Floor, to PTSW. See Aff. of Michael Irwin at ¶¶ 6-7.

In 2002 PTSW unilaterally ceased its payments and defaulted under the Loan Agreement after having made approximately $250,000 in interest payments to BSB over the course of several years. On September 30, 2003, PTSW sent a letter to BSB purporting to repudiate the Loan Agreement. PTSW paid BSB $168,809.42 with its letter of September 30, 2003 in an attempt to extinguish its obligations. See Aff. of Michael Irwin at ¶¶ 9-11.

In October 2003, PTSW, without any notice whatsoever to BSB, improperly obtained an <u>ex parte</u> ruling of the District Court of South Jakarta in Indonesia, which purported to conclude that PTSW had fully repaid its debts under the Loan Agreement and ruled that the Mortgage must be released. The decision of the District Court of South Jakarta is attached as Ex. 5. BSB learned of the South Jakarta Court proceeding only after the issuance of the <u>ex parte</u> order. See Aff. of Michael Irwin at ¶ 12.

Upon learning of the <u>ex parte</u> order, BSB attempted to collect the funds due from PTSW by commencing an arbitration in Singapore (the "Arbitration") on January 15, 2004 pursuant to the Transfer Agreement's provision that any dispute "relating to this agreement" would be subject to arbitration in Singapore pursuant to SIAC rules. See Ex. 2 at Article 7; Aff. of Michael Irwin at ¶ 13. In the Arbitration, BSB alleged that PTSW had breached the Transfer Agreement and sought damages in the amount of $2,915,040 plus interest and other relief. A copy of BSB's Statement of Case (without exhibits) is attached hereto as Ex. 6. PTSW raised numerous procedural objections in the Arbitration, including that the Tribunal lacked jurisdiction over the dispute, that the dispute should be litigated in Indonesia pursuant to a dispute resolution

provision in the Loan Agreement, that BSB had commenced the Arbitration in the wrong corporate form and that BSB should be required to post security for costs. See Aff. of Michael Irwin at ¶ 14.

Before the Arbitration reached a decision on the merits, the High Court of Jakarta vacated the ex parte ruling of the District Court of South Jakarta that had purported to invalidate the Loan Agreement and the Mortgage. The decision of the High Court of Jakarta is attached as Ex 7. The local land office in South Jakarta subsequently reinstated the Mortgage in favor of BSB. The reinstatement of the Mortgage is attached as Ex. 8.

Upon obtaining relief from the High Court of Jakarta and the South Jakarta land office, BSB sought to withdraw its Arbitration claim because the actions of the Court and the land office had already restored the legal rights that BSB sought to vindicate in the Arbitration. BSB advised the Tribunal that it would henceforth seek to enforce its rights in the Indonesian courts. BSB's Application for Withdrawal of Claim is attached as Ex 9. See Aff. of Michael Irwin at ¶ 15.

On or about December 16, 2004, in response to BSB's application to withdraw its claim, the Tribunal issued the Final Award. The Final Award allowed BSB to withdraw its claim but required BSB to pay the costs of the Arbitration and PTSW's costs. However, the Tribunal did not fix the amount of the costs; instead, the Tribunal said that the amount of fees should be agreed to by the parties or determined by the SIAC Registrar. The Final Award is attached as Ex. 10. On December 17, 2004, without previously seeking an agreement with BSB as to the amount of attorneys' fees or asking the SIAC Registrar to determine the fees (as required by the Final Award), PTSW commenced this action and obtained an ex parte attachment in the amount of $388,000 against BSB's account at Citizens Bank. In seeking the ex parte attachment, PTSW

made no mention of its own default under the Loan Agreement, its unsuccessful ex parte effort in Indonesia to repudiate the Loan Agreement, or that PTSW continues to owe BSB over $4 million (*i.e.*, approximately $3 million in principal and more than $1 million in accrued but unpaid interest, plus BSB's costs of collecting its debt from PTSW.) See Aff. of Michael Irwin at ¶ 16.

The parties have not reached any agreement as to the amount of the costs payable by BSB pursuant to the Final Award. On December 22, 2004, **after** obtaining the ex parte attachment, PTSW's counsel sent a letter to BSB's counsel in Jakarta asserting that its costs total $541,019.97, approximately twice what it sought by way of attachment from this Court. The December 22 letter is attached as Ex 11. Although PTSW's December 22 letter sought BSB's agreement to pay the alleged costs, BSB has not agreed to pay PTSW this amount because, among other reasons, PTSW has not provided sufficient documentation for the amount of the costs it requests, as discussed below. BSB's response letter of December 28 requesting evidence of costs is attached as Ex. 12. BSB's letter of December 30 reiterating this request is attached as Ex. 13.

On January 18, 2005, PTSW requested SIAC to set the fees at $571,948.39, again without providing any invoices or other probative evidence of the dollar amounts of legal services involved in the arbitration. The next day, BSB moved to vacate the Court's ex parte attachment.

US1DOCS 4904620v1

## ARGUMENT

I. **THIS ACTION TO ENFORCE THE PAYMENT OF COSTS IS PREMATURE BECAUSE THE AMOUNT OF COSTS HAS NOT BEEN ESTABLISHED BY THE ARBITRAL TRIBUNAL, BY AGREEMENT OF THE PARTIES, OR BY THE REGISTRAR OF THE SINGAPORE INTERNATIONAL ARBITRATION CENTRE**

A. **PTSW Does Not Have A Monetary Award Of Costs To Enforce.**

The ex parte attachment should be vacated because there is currently no monetary award of costs that is subject to enforcement by this Court in accordance with the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards. *See* 9 U.S.C. 201 *et. seq.*

In fact, although PTSW asserts in its ex parte motion for attachment that the Trust cannot establish any valid defense under Article V of the Convention, Article V 1(e) specifically provides that a court should not enforce an award that is not final and has not yet become binding on the parties.

In the Final Award, the Tribunal indicated that PTSW is entitled to recover legal costs, expenses and disbursements as referred to in SIAC Rule 30.3. SIAC Rule 30.3 allows the Tribunal to award "all **or a part of** the legal or other costs of a party." The Tribunal did not specify a monetary amount for BSB to pay to PTSW, but instead directed that the amount would be determined by agreement of the parties or would be fixed by the SIAC Registrar.

The parties have not reached agreement as to the amount of these costs. PTSW has not provided documentation sufficient to show that the costs it requests are legal costs related to the Arbitration.

As of the filing of this memorandum, to BSB's knowledge, the SIAC Registrar has not issued any monetary ruling on the amount of these costs that PTSW may recover.

Without an agreement between the parties or a decision by the SIAC Registrar, PTSW has not yet obtained a monetary award as to costs that this Court can enforce.

### B. PTSW Has Not Demonstrated That It Incurred $364,000 In Costs In Connection With The Arbitration.

In connection with its application to this Court for an ex parte attachment, PTSW submitted redacted legal invoices totaling approximately $364,000. See Supplemental Affidavit of Konrad Baerverldt in Support of Ex Parte Motion to Attach by Trustee Process. However, because the invoices are redacted, it is impossible to determine whether all of the purported fees related to the Arbitration or whether some covered the ex parte litigation that PTSW brought in Indonesia to invalidate the Loan Agreement and the Mortgage or other matters. Furthermore, because Mr. Baerverldt recently told PTSW's own shareholders that its legal fees in all of the legal proceedings involving BSB, including Indonesian litigation as well as the Arbitration, had been approximately $250,000, the submission of redacted invoices totaling $364,000 is extremely dubious. See November 28, 2004 letter from Baerveldt attached as Ex. 14.

Even if PTSW were entitled to $364,000 in attorneys' fees, PTSW is not entitled to $388,000 because this amount includes costs incurred by the Tribunal, not PTSW. In its December 17 motion filed in this Court, PTSW includes $24,348.41 (40,014.18 Singapore dollars) in costs to the SIAC Arbitrators - the full amount that the Tribunal lists as its own costs in the Final Award. The Final Award requires that the costs to the Tribunal be paid out of the deposits of BSB and PTSW and that BSB reimburse PTSW for any expenses paid out of PTSW's deposit. BSB currently has 20,839 Singapore dollars on deposit with SIAC and PTSW has 9,970 Singapore dollars on deposit with SIAC. Therefore, the maximum amount that BSB could owe PTSW for the Tribunal's costs is 9,970 Singapore dollars, not 40,014.

PTSW's December 22, 2004 claim for $541,019.97 from BSB is even more dubious. The "breakdown for costs incurred" that PTSW attached to its December 22 letter does not include any description of any legal or other service provided, how it related to the Arbitration, how much time was spent, or the hourly rate incurred. The list includes costs for at least four different entities, including one "consultant", and does not offer any explanation of their roles in relation to the Arbitration. The "breakdown" also includes $12,432 in airfare for PTSW officers to attend PTSW's own Executive Board meeting in Toronto and $122,500 in salary for PTSW officers.

Even if, contrary to BSB's arguments set forth above, the Court determines that PTSW is entitled to an attachment prior to an agreement between the parties or a ruling by the SIAC Registrar as to the amount of costs, the amount of the attachment should be reduced to an amount that PTSW proves by credible evidence is legal costs related exclusively to the Arbitration.

## II. UNDER THE LOAN AGREEMENT, BSB IS ENTITLED TO SET OFF ANY OBLIGATION FOR COSTS AGAINST AMOUNTS OWING BY PTSW

PTSW has no right to a monetary judgment in this case because BSB is entitled to set off any amount recoverable by PTSW pursuant to the Award against PTSW's payment obligations under the Loan Agreement. *See Jugometal v. Samincorp, Inc.*, 78 F.R.D. 504, 506-07 (S.D.N.Y 1978) (exercising ancillary jurisdiction over defendants' setoff claims and counterclaims in action to enforce international arbitration award pursuant to New York Convention: "It would be inequitable to permit this plaintiff to recover a judgment here against the defendant on the concededly valid arbitral award in its favor, and at the same time to withhold enforcement of the three counterclaims . . .The Convention does not prevent this Court from entertaining set-offs or counterclaims."); *Pike v. Freeman*, 266 F.3d 78 (2d Cir. 2001) (reversing district court's decision in enforcement proceeding to dismiss counterclaim not adjudicated on the merits in arbitration

proceeding); *cf Hewlett-Packard Co., Inc. v. Berg*, 61 F.3d 101, 105 (1st Cir. 1995) (where setoff claim was subject of second arbitration, Court stayed enforcement of the first arbitration award pending outcome of second arbitration.)

Not only does the New York Convention permit such setoff, but the Loan Agreement specifically allows BSB to reduce any obligations under the Award by the (much larger) amount that PTSW owes BSB pursuant to the Loan Agreement. Section 17 of the Loan Agreement (entitled "Set Off") provides:

> The Lender (BSB) may at any time set off any claims of the Borrower (PTSW) against the Lender in whatever currency and whether or not contingent and whether or not due and payable in or towards satisfaction of any sum whether or not contingent and whether or not due and payable to the Lender under or in connection with the Loan Agreement.

In addition, Section 22 of the Loan Agreement gives BSB as the Lender the right to bring proceedings against PTSW in any court of competent jurisdiction.

Moreover, under Sections 14.2 and 15 of the Loan Agreement, BSB has the right to recover its costs for enforcing the Loan Agreement and obtaining payment from PTSW. See Ex. 3.

Because of BSB's right to setoff, PTSW cannot demonstrate a likelihood of succeeding in obtaining a monetary judgment in its favor in this case. Consequently, PTSW is not entitled to a trustee process attachment pursuant to Mass R. Civ. P. 4.2. *See, e.g., Sheehan v. Netversant-New England, Inc.*, No. CIV.A. 04-10559-NMG, 2004 WL 2711675 (D. Mass. Nov. 22, 2004) (denying attachment because of uncertainty that plaintiff would recover).

III.  **BSB IS LIKELY TO RECOVER DAMAGES AGAINST PTSW UNDER THE LOAN AGREEMENT IN AN AMOUNT GREATER THAN PTSW'S CLAIM FOR COSTS**

It is undisputed that PTSW stopped making payments to BSB in 2002 (other than the payment in September 2003 in connection with PTSW's repudiation of the Loan Agreement). As stated above, PTSW is currently indebted to BSB in the amount of more than $4 million.

As part of its application to withdraw its claim in the Arbitration, BSB indicated that it intended to seek to foreclose on the Mortgage and to obtain the payments that PTSW owes to BSB, but no longer needed the Tribunal to reinstate the Mortgage because the High Court of Jakarta had already reinstated it.  Because PTSW has chosen to appear before this Court to enforce its rights to the Award, and because the Loan Agreement authorizes BSB as the Lender to bring its claims in any court of competent jurisdiction (See Ex. 3, p. 10, ¶ 22), this Court is now the appropriate forum to determine that PTSW owes BSB an amount far greater than any obligation on the part of BSB for costs under the Award.

IV.  **UNLESS THE ATTACHMENT OF BSB'S BANK ACCOUNT IS VACATED, BSB WILL BE UNABLE TO DEFEND ITSELF IN THIS PROCEEDING**

The trustee attachment of BSB's bank account has frozen BSB's only liquid assets.  If the Court declines to vacate the attachment, BSB will have no financial means to defend itself in this action or to pursue a counterclaim for PTSW's default under the Loan Agreement and the more than $4 million obligation that PTSW owes BSB.  Such a result would be extremely prejudicial and unfair to BSB under the circumstances of PTSW's repeated commercial and litigation misconduct.

From 1993 to 1998 BSB's principal income consisted of rent payments from third party lessees of the Mezzanine Floor.  After the 1998 transfer of the rights in the Mezzanine Floor to PTSW, BSB's principal income consisted of interest payments from PTSW pursuant to the Loan

Agreement. PTSW was familiar with and intimately involved in these business arrangements. When PTSW failed to repay the loan in 2002, BSB's only income disappeared. See Aff. of Michael Irwin, ¶ 17.

To make matters worse, since PTSW defaulted on its loan obligations and obtained the improper ex parte ruling from the District Court of South Jakarta invalidating the Loan Agreement and canceling the Mortgage, BSB has been forced to spend its limited remaining funds in legal proceedings with PTSW. BSB commenced the arbitration in Singapore in an effort to obtain relief for PTSW's repudiation of its obligations but PTSW forced it to expend substantial sums contesting PTSW's arguments that the Tribunal lacked jurisdiction. See Ex. 9 at ¶¶ 5.5, 6.6; Aff. of Michael Irwin at 14. Eventually BSB obtained relief from the High Court of Jakarta, which nullified the ex parte District Court ruling and led to restoration of the Mortgage. See Ex. 5. It would be exceedingly unfair if PTSW is permitted to discontinue loan payments, force BSB to expend much of its capital to over turn the improper ex parte decree in Indonesia, and then freeze the only assets which BSB can use to vindicate its legal rights to payments under the Transfer Agreement, Loan Agreement and Mortgage. See Aff. of Michael Irwin, ¶¶ 18, 20.

Concurrently with BSB's present motion, BSB's Boston counsel has filed a limited appearance for the purpose of seeking to vacate the attachment. See Limited Appearance, filed herewith. If the attachment is not lifted, BSB has no funds to pay counsel. See Aff. of Michael Irwin, ¶ 19. Particularly where BSB has a valid set off defense and counterclaim, BSB should not be precluded from presenting that defense or counterclaim by cutting off its only source of funds to engage counsel on its behalf. At the time of the attachment, the bank account held approximately $240,000 in funds on behalf of BSB. See Aff. of Michael Irwin, ¶ 21.

US1DOCS 4904620v1

BSB submits that any attachment of its bank account pursuant to Mass. R. Civ. P. 4.2 is unjustified. However, if the Court is inclined to grant some security to PTSW, the attachment should be limited to $120,000 so that BSB will have at least $120,000 with which to fund its defense of this litigation and prosecute its counterclaim.

### CONCLUSION

For the reasons stated above, the Court should vacate the ex parte trustee process attachment that it issued on or about December 17, 2004.

In the alternative, the attachment should be reduced to a lesser amount that will enable BSB to defend this action and pursue its counterclaims.

BSB RESIDUAL ASSETS TRUST
AND BSB TRUST COMPANY, LTD.,
TRUSTEE, Respondent

By its attorneys,


/s/ Alison R. Aubry
Richard A. Johnston (BBO # 253420)
Alison R. Aubry (BBO # 657298)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Dated: January 19, 2005