UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In the Matter of the Arbitration Between: | ) | |
| | ) | |
| PT SUMOHADIWIDJOJO, | ) | |
| | ) | |
|         Applicant, | ) | |
|         (Respondent below) | ) | |
|    v. | ) | CIVIL ACTION |
| | ) | NO. 04-12646-NG |
| BSB RESIDUAL ASSETS TRUST, | ) | |
| BSB TRUST COMPANY, LTD., Trustee, | ) | |
| | ) | |
|         Respondents | ) | |
|         (Claimant below). | ) | |
| _____ | ) | |
| | ) | |
| CITIZENS BANK, | ) | |
| | ) | |
|         Trustee. | ) | |

**ORDER ON RESPONDENTS' MOTION TO
VACATE OR REDUCE EX PARTE ATTACHMENT**

April 12, 2005

DEIN, U.S.M.J.

## I.  INTRODUCTION

This case involves an application to confirm and enforce an arbitral award,

pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral

Awards ("Convention"), as implemented in 9 U.S.C. §§ 201 et seq., which the Singapore

International Arbitration Centre ("SIAC") issued in favor of the applicant, PT

Sumohadiwidjojo ("PTSW"), and against the respondents, BSB Residual Assets Trust

and BSB Trust Company, Ltd., Trustee (collectively, "BSB").  Presently before the court

is BSB's motion to vacate or reduce a $388,000 ex parte attachment that the court

previously granted in favor of PTSW in order to secure its ability to collect on the SIAC

award.  After consideration of the parties' submissions and their arguments at a hearing

before this court on March 30, 2005, BSB's motion (Docket No. 10) is ALLOWED IN

PART and DENIED IN PART, without prejudice to further consideration upon a change

in circumstances as described below.  Thus, it is ordered that the attachment is reduced to

$287,000.00.

## II.  FACTUAL BACKGROUND[1]

The parties' underlying dispute arises out of the purchase and sale of certain rights

and interests in the mezzanine floor of the S. Widjojo Centre in Jakarta, Indonesia.  On

August 11, 1997, PTSW and BSB entered into a Purchase and Sale Agreement pursuant

---

[1]  PTSW argues that BSB's presentation of the alleged facts of the parties' underlying dispute constitutes "an unfortunate effort to obfuscate and complicate the routine matter of enforcing the SIAC Final Award as required by the ... Convention ...."  (Applicant PTSW's Opposition to Respondent's Motion to Vacate or Reduce Ex Parte Attachment (Docket No. 18) at 2-3).  However, equitable considerations based on the circumstances of the parties' dispute are appropriate in a confirmation proceeding such as this one, see Hewlett-Packard Co., Inc. v. Berg, 61 F.3d 101, 105-06 (1st Cir. 1995) (considering Hewlett-Packard's "very substantial prudential argument" and describing decision to stay confirmation of arbitration award as a "fair solution" under the circumstances of the case), and are relevant to the court's discussion of BSB's motion. Accordingly, the court summarizes the alleged facts, which are derived from the following materials submitted by the parties in connection with BSB's motion: (1) Affidavit of Michael Irwin in Support of Respondents' Motion to Vacate or Reduce Ex Parte Attachment (Docket No. 12) ("Irwin Aff."); (2) Affidavit of Alison Aubry, Esq. in Further Support of Respondents' Motion to Vacate or Reduce Ex Parte Attachment (Docket No. 13) ("Aubry Aff."); and (3) Affi-davit of Richard S. Nicholson, Esq. (Docket No. 19) ("Nicholson Aff.").

to which PTSW agreed to purchase BSB's rights in the mezzanine floor. (Irwin Aff. ¶¶ 5, 6; Aubry Aff., Ex. 1). Subsequently, in February 1998, the parties entered into a series of agreements, including a Transfer Agreement, a Loan Agreement and a Deed of Security Rights over Land, in order to implement the Purchase and Sale Agreement. (Irwin Aff. ¶ 6). Pursuant to the Transfer Agreement, BSB agreed to transfer all of its rights and interest in the mezzanine floor to PTSW for a price of $2,915,040. (Aubry Aff., Ex. 2). The Transfer Agreement provides, inter alia, for the resolution of disputes by arbitration in Singapore under the rules of the SIAC, and states that "[t]he Arbitration award issued thereunder shall be final and binding upon the Parties hereof." (Id. at Art. 7).

Under the Loan Agreement, BSB agreed to lend PTSW $3,060,000, and PTSW agreed to use the money to maintain the S. Widjojo Centre and to pay the $2,915,040 purchase price for the rights to the mezzanine floor by making principal and interest payments to BSB. (Aubry Aff., Ex. 3). The Loan Agreement contains a set-off provision, which states:

> The Lender [BSB] may at any time set off any claims of the Borrower [PTSW] against the Lender in whatever currency and whether or not contingent and whether or not due and payable in or towards satisfaction of any sum whether or not contingent and whether or not due and payable to the Lender under or in connection with this Loan Agreement.

(Id. at ¶ 17). Moreover, the Loan Agreement provides that "[a]ll disputes arising out of this Loan Agreement shall be submitted to the District Court of South Jakarta," but further states that "[n]othing . . . shall limit the right of [BSB] to bring proceedings

against [PTSW] in any other court of competent jurisdiction." (Id. at ¶ 22). The loan was secured by the Deed of Security Rights over Land, the equivalent of a mortgage. (Irwin Aff. ¶ 6; Aubry Aff., Ex. 4).

After BSB transferred its interest in the mezzanine floor to PTSW, BSB's principal assets were its right to payments from PTSW under the Loan Agreement and the mortgage. (Irwin Aff. ¶ 8). According to BSB, PTSW made approximately $250,000 in interest payments to BSB over the course of several years. (Irwin Aff. ¶ 9). However, on September 30, 2003, PTSW allegedly sent BSB a letter purporting to repudiate the loan agreement. (Id. ¶ 11). PTSW also allegedly attempted to extinguish its obligations under the Loan Agreement by including a payment of $168,809.42 with the letter. (Id.).

In October 2003, PTSW, without notice to BSB and without BSB's knowledge, obtained an ex parte order from the District Court of South Jakarta, Indonesia. (Id. ¶ 12; Aubry Aff., Ex. 5). The court ruled in its order that PTSW had satisfied its debt obligation to BSB under the Loan Agreement and that PTSW's mortgage should be released. (Id.).

On January 15, 2004, after learning about the ex parte order of the Jakarta District Court, BSB commenced arbitration in Singapore claiming that PTSW had breached the Transfer Agreement and the Loan Agreement and seeking damages of $2,915,040 plus interest and other relief. (Irwin Aff. ¶ 13; Aubry Aff., Ex. 6). PTSW raised various procedural and jurisdictional objections to BSB's claims. (Irwin Aff. ¶ 14).

While the arbitration was pending, and before the arbitration tribunal was able to render a decision on the merits of BSB's claims, the High Court of Jakarta, Indonesia vacated the lower court's <u>ex parte</u> ruling. (Irwin Aff. ¶ 15; Aubry Aff., Ex. 7). As a result, the local Jakarta land office reinstated the mortgage in favor of BSB. (Irwin Aff. ¶ 15; Aubry Aff., Ex. 8). Thereafter, on September 21, 2004, BSB filed an application to withdraw its arbitration claims. (Aubry Aff., Ex. 9). In its application, BSB stated, among other things, that the reinstatement of its security rights by the High Court of Jakarta made it possible for BSB to seek foreclosure on its mortgage in Indonesia and to obtain the payments that PTSW owed to BSB. (<u>Id.</u> at ¶¶ 2, 5). PTSW objected to BSB's application, and alternatively requested that BSB only be allowed to withdraw on the condition that it reimburse PTSW's arbitration costs and that the arbitration tribunal issue an order barring BSB from recommencing its claims before the SIAC. (Nicholson Aff., Ex. 2).

On December 15, 2004, the arbitration tribunal issued a Final Award in which it allowed BSB to withdraw its claims and directed BSB to pay the arbitration costs, as well as the legal fees, expenses and disbursements that PTSW had incurred in connection with the arbitration. (<u>Id.</u>, Ex. 1). The amount of PTSW's fees was "to be agreed between the parties and failing agreement to be taxed by the Registrar of SIAC . . . ." (<u>Id.</u> at ¶ 13). The tribunal, in its Award, also precluded BSB from further arbitrating its claims against PTSW unless and until it paid PTSW's costs in full. (<u>Id.</u>).

On December 17, 2004, PTSW commenced this action and, although the amount of its Final Award had not yet been fixed, moved for an <u>ex parte</u> attachment in the amount of $388,000 against BSB's account at Citizens Bank.  The District Court granted PTSW's motion for the <u>ex parte</u> attachment by trustee process in order to secure PTSW's ability to collect under the Final Award.  Subsequently, on March 11, 2005, the SIAC Registrar issued a certificate taxing costs at approximately $287,000.[2]  (Nicholson Aff., Ex. 1).

The parties agree that BSB's attached account at Citizens Bank holds approximately $369,717.  BSB also asserts, and PTSW has no information to the contrary, that the Citizens account contains all of BSB's liquid assets.  (Irwin Aff. ¶ 21; PTSW's Mem. at 6).  BSB argues that the attachment has made it financially impossible for BSB to pursue its claims against PTSW under the Loan Agreement or to pay for legal fees necessary to seek a foreclosure on the mortgage in Indonesia.

### III.  DISCUSSION

BSB argues that the attachment should be vacated because the set off provision of the parties' Loan Agreement entitles BSB to reduce its obligations to PTSW under the SIAC Final Award by the much larger amount that PTSW owes to BSB under the Loan Agreement.  Specifically, BSB contends that PTSW owes it more than $4 million in

---

[2]  The parties agree that the final amount of the SIAC award is about $287,000.  Because the SIAC Registrar expressed certain portions of the final amount in Singapore dollars, which have been converted to United States dollars, the $287,000 figure may not be exact.

principal, interest and costs under the Loan Agreement, and that therefore, PTSW cannot

demonstrate a likelihood of success in obtaining a monetary judgment in its favor in this

case.  BSB further argues that this court has the authority to render a judgment on BSB's

proposed counterclaim for damages based on PTSW's alleged breach of the Loan

Agreement, and to apply a set off.[3]  PTSW counters that there is no authority for asserting

a counterclaim requiring the court to exercise jurisdiction over the parties and subject

matter of the underlying dispute and to allow full litigation in an action to confirm an

arbitral award pursuant to the Convention.

"The Convention is a United Nations treaty to which the United States became a

party in December 1970 . . . Legislation implementing the Convention is codified in

Chapter 2 of Title 9 of the United States Code."  Fertilizer Corp. of India v. IDI Mgmt.,

Inc., 517 F. Supp. 948, 950 (S.D. Ohio 1981).  The Code allows any party to an

arbitration to apply to a district court for an order confirming the arbitral award within

three years following the award.  9 U.S.C. § 207.  "The court shall confirm the award

unless it finds one of the grounds for refusal or deferral of recognition or enforcement of

the award specified in the said Convention."[4]  Id.

---

[3] In its Memorandum in Support of Respondents' Motion to Vacate or Reduce Ex Parte
Attachment (Docket No. 11) ("BSB's Mem."), which BSB filed before the SIAC Registrar taxed
the final costs to BSB, BSB argued that PTSW's action was premature.  (BSB's Mem. at 6-8).
BSB now agrees that PTSW's application to confirm the SIAC award is not premature.  (BSB's
Reply Mem. (Docket No. 22) at 3).

[4] Article V of the Convention sets forth the only grounds under which a court may refuse
to confirm an award.  BSB has not relied on any of these exceptions to support its request to
vacate the attachment.

As the Convention and its implementing legislation suggest, actions to confirm an arbitration award are "intended to be summary in nature." Booth v. Hume Publ'g, Inc., 902 F.2d 925, 932 (11th Cir. 1990). See also Diapulse Corp. of Am. v. Carba, Ltd., 626 F.2d 1108, 1110 (2d Cir. 1980) (judicial review of arbitration awards is narrowly limited). There is authority, however, under which a district court may entertain a set off or counterclaim in a proceeding to confirm an arbitration award under the Convention, at least where consideration of those claims would not require "a lengthy hearing on an unliquidated claim" or "frustrate the fair and speedy administration of justice as required by the Convention." Jugometal v. Samincorp, Inc., 78 F.R.D. 504, 507 (S.D.N.Y. 1978). See also Thomas H. Oehmke, 1 Commercial Arbitration § 41:106 (2004) (counterclaims and offsets may be allowed in response to an action to enforce an award under the Convention). But see Booth, 902 F.2d at 933 n.8 (rejecting reasoning of cases that would allow a counterclaim to be asserted in a proceeding to confirm an arbitral award where the counterclaim does not fall within the statutory defenses); Fertilizer Corp. of India, 948 F. Supp. at 963 (counterclaims are inappropriate in a confirmation proceeding). Here, however, BSB's proposed counterclaim, the merits of which remain disputed and therefore unclear, is not presently before this court. BSB only has filed a motion concerning the propriety and amount of the attachment. It has not filed any pleading which would allow the court to determine the merits of its claim against PTSW. Accordingly, there is no basis for this court to determine whether it has authority to

exercise jurisdiction over the parties and subject matter of the proposed counterclaim or to issue a ruling on the merits in the context of the present motion.

Although BSB has shown that there is a genuine dispute regarding its right to a set off under the parties' Loan Agreement, its claim remains unliquidated. PTSW, on the other hand, has demonstrated a reasonable likelihood that it will recover $287,000 from BSB. The parties agree that the SIAC issued a Final Award in that amount in favor of PTSW and against BSB, that PTSW has initiated a confirmation proceeding in a timely manner, and that BSB is not seeking to vacate that award — just to offset it against amounts it claims PTSW owes. The court finds, therefore, that an attachment in the amount of $287,000 is appropriate to secure PTSW's ability to collect its arbitral award. See Mass. R. Civ. P. 4.2 (authorizing trustee process upon a finding by the court that there is a reasonable likelihood that the plaintiff will recover judgment in an amount equal to or greater than the amount of the trustee process).[5] Accordingly, BSB's motion to vacate the ex parte attachment is denied, but its alternative request to reduce the attachment is allowed. This court declines at this time to further reduce the attachment in order to provide BSB with additional litigation funds to pursue a disputed claim where PTSW has already obtained a Final Award against BSB. However, this ruling is without

---

[5] Remedies, including attachments, providing for seizure of property for the purpose of securing satisfaction of a judgment ultimately to be entered in an action are determined by the law of the forum state. Fed. R. Civ. P. 64.

prejudice, and BSB may seek a further reduction of the attachment if future events establish a likelihood of success on the merits of its claims against PTSW.

PTSW does not object to the release of $53,000 from the attachment, but it argues that the attachment should include an amount representing the interest that PTSW would be entitled to under the Final Award. PTSW has submitted authority from the Republic of Singapore indicating that the arbitration award carries interest from the date of the award at a rate of six percent per annum. See Exhibits to PTSW's Motion for Leave to Submit Authority Regarding Interest on SIAC Final Award (Docket No. 23). The SIAC finally set the amount of PTSW's Final Award on March 11, 2005. Because the amount of interest on the award is thus far so small as to be insignificant, this court declines to attach more than $287,000.

While PTSW has demonstrated that it is entitled to an attachment of $287,000, the evidence that BSB submitted concerning the factual background of this dispute demon-strates that a stay of enforcement of the attachment in order to afford BSB an opportunity to pursue its substantive claims against PTSW and to resolve its disputed right to a set off may be appropriate. See Jugometal, 78 F.R.D. at 506-07 (exercising judicial powers over defendant's liquidated counterclaims where the "interests of justice" so require). This court would have the authority to grant such a stay upon request by BSB. See Hewlett-Packard Co., Inc. v. Berg, 61 F.3d 101, 105 (1st Cir. 1995) ("Ordinarily there could be no doubt that a court . . . would retain discretion to defer proceedings for prudential

reasons."). However, that issue also is not presently before this court as BSB has not

filed a request for a stay.

## IV.  CONCLUSION

For the reasons described herein, "Respondents' Motion to Vacate or Reduce <u>Ex</u>

<u>Parte</u> Attachment" (Docket No. 10) is ALLOWED IN PART and DENIED IN PART.  It

is hereby ORDERED that the amount of the attachment of BSB's Citizens Bank account

shall be reduced to $287,000.  This ruling is made without prejudice.


     / s / Judith Gail Dein
     Judith Gail Dein
     United States Magistrate Judge