UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In the Matter of an Arbitration Between:<br><br>PT SUMOHADIWIDJOJO,<br><br>    Applicant and<br>    Counterclaim Defendant<br>    (Respondent below)<br><br>and<br><br>BSB RESIDUAL ASSETS TRUST,<br>BSB TRUST COMPANY, LTD., Trustee,<br><br>    Respondent and<br>    Counterclaim Plaintiff<br>    (Claimant below).<br><br>CITIZENS BANK<br><br>    Trustee. | CIVIL ACTION NO. 04 12646 NG<br><br>MEMORANDUM IN SUPPORT OF RESPONDENT'S MOTION TO STAY CONFIRMATION AND ENFORCEMENT OF THE SIAC AWARD |

## INTRODUCTION

Respondent BSB Residual Assets Trust and BSB Trust Company, Ltd., Trustee, (collectively "BSB") has moved to stay confirmation and enforcement of the arbitral award rendered by the Singapore International Arbitration Centre on December 15, 2004 ("SIAC Award"), in an arbitration between BSB Residual Assets Trust and Applicant PT Sumohadiwidjojo ("PTSW"). BSB prays that this Court stay confirmation and enforcement of the SIAC Award pending the resolution of BSB's substantive claim against PTSW, which is now before this Court and will result in a judgment in BSB's favor far exceeding any amount owed under the SIAC Award.

US1DOCS 5078997v5

-2-

This Court is familiar with the dispute between BSB and PTSW due to the briefing and argument of BSB's motion to vacate or reduce the *ex parte* attachment that PTSW obtained against a bank account containing all of BSB's liquid assets. On April 12, 2005, the Court allowed BSB's motion in part, ordering PTSW's attachment reduced from $388,000 to $287,000 without prejudice to renewal of the motion. Order on Respondents' Motion to Vacate or Reduce Ex Parte Attachment (Apr. 12, 2005) ("April 12 Order").

In its April 12 Order, this Court indicated that the evidence submitted by BSB demonstrated that a stay of enforcement of the SIAC Award may be appropriate "in order to afford BSB an opportunity to pursue its substantive claims against PTSW and to resolve its disputed right to a set off." April 12 Order, at 10 (citing *Jugometal v. Samincorp, Inc.*, 78 F.R.D. 504, 506-07 (S.D.N.Y. 1978)). The Court recognized that it "would have the authority to grant such a stay upon request by BSB." *See id.* at 10-11 (citing *Hewlett-Packard, Inc. v. Berg*, 61 F.3d 101, 105 (1st Cir. 1995)).

BSB is today filing its Answer and Counterclaim in this matter. BSB's counterclaim seeks to enforce PTSW's obligations under the parties' Loan Agreement dated February 17, 1998 ("Loan Agreement"), pursuant to which BSB loaned money to PTSW to purchase certain economic rights and interests in the Mezzanine Floor of the S. Widjojo Centre, a commercial office building located in Jakarta, Indonesia (the "Mezzanine Floor"), and certain other assets. PTSW has defaulted on the loan and has refused to make further payments thereon, despite having previously made such payments and repeatedly acknowledged its debt to BSB over several years.

For the reasons set forth below, this Court should exercise its recognized authority to stay confirmation and enforcement of the SIAC Award pending resolution of BSB's substantive claim.

## FACTS

The facts of the dispute between BSB and PTSW are set out in BSB's Answer and Counterclaim filed today, in this Court's April 12 Order, and in the Affidavit of Michael Irwin dated January 12, 2005, submitted to the Court in support of BSB's motion to vacate or reduce PTSW's *ex parte* attachment ("Irwin Aff.").

BSB Residual Assets Trust, numerous beneficiaries of which reside in the United States, including in Massachusetts, entered into lengthy negotiations with PTSW regarding the potential sale of certain economic rights that BSB possessed in the Mezzanine Floor. A major part of the negotiation of the transaction took place in the United States. *See* BSB Counterclaim ¶¶ 6, 8-12.

On August 11, 1997, BSB and PTSW entered into a purchase and sale agreement whereby BSB agreed to sell, and PTSW agreed to buy, certain economic rights to the Mezzanine Floor of the S. Widjojo Centre, a commercial building in Jakarta, Indonesia (the "Mezzanine Floor"), and certain other assets for the total purchase price of US$3,060,000. In February 1998, BSB and PTSW implemented their purchase and sale agreement through a series of integrated agreements. Pursuant to a Transfer Agreement, BSB and PTSW agreed to a transfer of the rights to the Mezzanine Floor in exchange for a purchase price of $2,915,040. Under a separate Loan Agreement, BSB agreed to lend PTSW $3,060,000, including the $2,915,040 purchase price for the rights to the Mezzanine Floor, and PTSW agreed to make principal and interest payments to BSB. The loan was secured by a Deed of Security Rights over Land, the equivalent of a mortgage. *See* April 12 Order at 2-3; BSB Counterclaim ¶¶ 8-13 & Exs. A-D; Irwin Aff. ¶¶ 5-6.

The Loan Agreement provides that the principal amount of $3,060,000, plus interest as provided for in the Agreement, was due and payable on December 15, 2002. The Loan Agreement also provides that BSB "may at any time set off any claims of [PTSW] against [BSB] in whatever currency and whether or not contingent and whether or not due and payable in or towards satisfaction of any sum whether or not contingent and whether or not due and payable to [BSB] under or in connection with this Loan Agreement." *See* April 12 Order at 3; BSB Counterclaim ¶ 20 & Ex. C at cl. 17.

PTSW made payments under the Loan Agreement until September 2002, when PTSW unilaterally ceased its payments, after having made approximately $250,000 in interest payments to BSB over the course of several years. PTSW did not pay the principal amount of $3,060,000 when due on December 15, 2002. On September 30, 2003, PTSW sent BSB a letter purporting to repudiate the Loan Agreement and including a payment of $168,809.42 in an attempt to extinguish its obligations under the Loan Agreement. *See* April 12 Order at 4; BSB Counterclaim ¶¶ 23-24; Irwin Aff. ¶¶ 9-11.

In October 2003, PTSW improperly obtained an *ex parte* ruling of the District Court of South Jakarta in Indonesia, which purported to conclude, without any notice whatsoever to BSB, that PTSW had fully repaid its debts under the Loan Agreement and that the Mortgage must be released. BSB learned of the South Jakarta Court proceeding only after the issuance of the *ex parte* order. *See* April 12 Order at 4; BSB Counterclaim ¶ 26; Irwin Aff. ¶ 12.

Upon learning of the *ex parte* order, BSB sought relief by commencing an arbitration before a tribunal at the Singapore International Arbitration Centre ("SIAC") on January 15, 2004, pursuant to an arbitration clause in the Transfer Agreement. PTSW raised numerous

-4-

procedural and jurisdictional objections in the SIAC arbitration.  *See* April 12 Order at 4; BSB Counterclaim ¶¶ 28-29; Irwin Aff. ¶¶ 13-14.

Before the SIAC tribunal reached a decision on the merits, the High Court of Jakarta vacated the *ex parte* ruling of the District Court of South Jakarta that had purported to invalidate the Loan Agreement and the Mortgage.  The local land office in South Jakarta subsequently reinstated the Mortgage in favor of BSB.  Upon obtaining relief from the High Court of Jakarta and the South Jakarta land office, BSB sought to withdraw its arbitration claim because the actions of the Court and the land office had already restored the legal rights that BSB sought to vindicate in the SIAC arbitration.  *See* April 12 Order at 5; BSB Counterclaim ¶¶ 30-31; Irwin Aff. ¶15.

On December 15, 2004, in response to BSB's application to withdraw its claim, the SIAC arbitration tribunal issued the SIAC Award.  The SIAC Award allowed BSB to withdraw its claim but required BSB to pay the costs of the arbitration and PTSW's costs.  The Tribunal did not fix the amount of the costs; instead, the Tribunal said that the amount of fees should be agreed to by the parties or determined by the SIAC Registrar.  *See* April 12 Order at 5; BSB Counterclaim ¶ 32.

On December 16, 2004 -- the very day after the SIAC Award was issued -- PTSW filed its Application to Confirm and Enforce Foreign Arbitral Award ("Application") in this Court, seeking to enforce the SIAC Award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, implemented by 9 U.S.C. §§ 201 *et seq.* ("New York Convention").  PTSW also sought and obtained an *ex parte* attachment in the amount of $388,000 against an account held by BSB at Citizens Bank, without previously seeking an agreement with BSB as to the amount of attorneys' fees or asking the SIAC Registrar to

-5-

determine the fees (as required by the SIAC Award).  *See* April 12 Order at 6; BSB Counterclaim ¶ 33.

In seeking the *ex parte* attachment, PTSW made no mention of its own default under the Loan Agreement, its unsuccessful *ex parte* effort in Indonesia to repudiate the Loan Agreement, or its continued debt to BSB in an amount exceeding $4 million (*i.e.*, approximately $3 million in principal and more than $1 million in accrued but unpaid interest, plus BSB's costs of collecting its debt from PTSW).  *See* BSB Counterclaim ¶ 34; Irwin Aff. ¶ 16.

BSB moved to vacate or reduce the *ex parte* attachment obtained by PTSW.  On March 11, 2005, while BSB's motion was being briefed, the SIAC Registrar issued a certificate taxing costs at approximately US$287,000.  *See* April 12 Order at 6; BSB Counterclaim ¶ 35-36.

On April 12, 2005, the Court issued its Order allowing BSB's motion in part and denying it in part.  The Court reduced the attachment of BSB's funds to $287,000, without prejudice to renewal of BSB's motion to vacate or reduce the attachment.  April 12 Order at 11.[1]

## ARGUMENT

**THIS COURT SHOULD STAY ENFORCEMENT OF THE SIAC AWARD PENDING RESOLUTION OF BSB'S SUBSTANTIVE CLAIM AGAINST PTSW UNDER THE LOAN AGREEMENT.**

This Court has already concluded, and properly so, that it "would have the authority" to stay enforcement of the SIAC Award "in order to afford BSB an opportunity to pursue its substantive claims against PTSW and to resolve its disputed right to a set off."  April 12 Order at 10; *see also Hewlett-Packard, Inc. v. Berg*, 61 F.3d 101, 105-06 (1st Cir. 1995) (holding that a

---

[1] The parties have stipulated that BSB's account shall remain attached in the amount of $302,000 until May 2, 2005.  In the event that PTSW objects to the Order on or before May 2, 2005, the account shall remain attached in the amount of $302,000 until the District Court rules on PTSW's objection.  In the event that PTSW does not object to the Order on or before May 2, 2005, PTSW consents to the release of all funds in the account in excess of $287,000.  *See* Stipulation, at 1-2 (Apr. 15, 2005).

US1DOCS 5078997v5

district court may stay enforcement proceedings under the New York Convention pending resolution of a related claim).

BSB has now filed a counterclaim in this Court that seeks adjudication of PTSW's breach of the parties' Loan Agreement and a set off of any amounts due to PTSW under the SIAC Award against PTSW's significantly greater debt to PTSW under the Loan Agreement. Just as in *Hewlett-Packard*, BSB's pending claim against PTSW is "closely related" to PTSW's claim under the SIAC Award, 61 F.3d at 105. Indeed, both claims result from the same ultimate controversy: BSB's attempt to obtain the benefits of the parties' bargain, despite PTSW's breaches and efforts to obstruct and avoid adjudication on the merits.

Like the respondent in *Hewlett-Packard*, BSB has consistently sought a fair and prompt decision on its claim that PTSW has defaulted on the Loan Agreement, notwithstanding PTSW's efforts to prevent any decision maker from reaching the merits in any *inter partes* proceeding. Like Hewlett-Packard, BSB sought to have its claims resolved "in one proceeding at the same time," *id.*: once the High Court of Jakarta and the South Jakarta land office restored the legal rights that BSB sought to vindicate at arbitration, BSB informed the SIAC tribunal that BSB intended to have its claims decided in a single action (foreclosure in Indonesia) rather than the two steps (arbitration and enforcement) that the SIAC arbitration would have required. Termination of the arbitration also put an end to PTSW's objections to the jurisdiction of the arbitral tribunal, which delayed adjudication of the merits of the dispute. However, BSB's planned resolution of its claims in Indonesia was preempted by the issuance of the attachment on December 17, 2004, which froze all of BSB's assets a mere two days after the issuance of the arbitration award on December 15.

-7-

BSB's efforts to obtain the efficient and effective resolution of its claims stands in marked contrast to PTSW's manifold attempts to avoid adjudication of the merits, including procuring an improper *ex parte* order in Indonesia, engaging in obstructionist tactics in the SIAC arbitration, and rejecting BSB's good faith efforts to resolve the parties' dispute through mediation or other extrajudicial means.  PTSW now attempts to use the SIAC Award to deprive BSB of assets needed to litigate the parties' underlying dispute, even though the SIAC Award arises out of the very same transaction as BSB's claim against PTSW.  Enforcement of the SIAC Award without giving BSB an opportunity to set off the award against PTSW's debt under the Loan Agreement would unjustly reward PTSW for its sharp litigation tactics.  The equities in this case, as in *Hewlett-Packard*, favor permitting resolution of the merits of BSB's counterclaim prior to the enforcement of the SIAC Award.[2]

The enumeration of grounds for "refus[ing]" an award in Article V of the New York Convention is irrelevant where, as here, the respondent does not seek "refusal" of the award, but rather a mere deferral of its enforcement until a closely related claim has been adjudicated.  *See Hewlett-Packard*, 61 F.3d  at 106 ("[A] stay is a deferral rather than refusal.").

Similarly, BSB does not ask this Court to engage in "judicial review" of the SIAC Award.  *Compare Diapulse Corp. of Am. v. Carba, Ltd.*, 626 F.2d 1108, 1110 (2d Cir. 1980) (holding that the Federal Arbitration Act did not permit a district court to "substitute its judgment

---

[2] *See also Jugometal v. Samincorp, Inc.*, 78 F.R.D. 504, 506-07 (S.D.N.Y. 1978) ("It would be inequitable to permit this plaintiff to recover a judgment here against the defendant on the concededly valid arbitral award in its favor, and at the same time to withhold enforcement of the three counterclaims . . . .  The Convention does not prevent this Court from entertaining set-offs or counterclaims . . . ."); 1 Thomas H. Oehmke, *Commercial Arbitration* § 41:106 (3d ed. 2004) ("U.S. district courts enforcing foreign arbitral awards can entertain setoffs or counterclaims, even though these same claims may not have been considered by the arbitrator when issuing the award" (citing *Jugometal*)); *cf. also Island Territory of Curacao v. Solitron Devices, Inc.*, 356 F. Supp. 1, 3 (S.D.N.Y. 1973) (considering "an answer asserting many defenses and with a counterclaim for money damages" under the New York Convention and dismissing the counterclaim only because it had been decided by the arbitrators and accounted for in the award).

for that of the arbitrators" by modifying an arbitral award).  Rather, BSB asks this Court to stay enforcement of the SIAC award in order to decide a related claim that the SIAC arbitrators did *not* address.  Nothing in the Federal Arbitration Act or the New York Convention prevents this Court from following such a procedure in the interest of fairness in this case.

PTSW will suffer no undue prejudice from a stay of confirmation and enforcement pending resolution of BSB's counterclaim.  Rather, the stay will permit the parties to resolve their dispute once and for all in the very forum chosen by PTSW.   It would be manifestly inequitable for the SIAC Award, which awarded costs only and did not resolve any issue on the merits, to derail adjudication of the parties' dispute, which is now before this Court.  Fairness and equity amply support a stay in this situation.

## **CONCLUSION**

For the foregoing reasons, the Court should stay confirmation and enforcement of the SIAC Award pending adjudication of BSB's substantive claim against PTSW.

> Respectfully submitted,
>
> /s/ Mark C. Fleming
> Richard A. Johnston (BBO # 253420)
> Mark C. Fleming (BBO # 639358)
> WILMER CUTLER PICKERING
> HALE AND DORR LLP
> 60 State Street
> Boston, MA  02109
> (617) 526-6000
> richard.johnston@wilmerhale.com
> mark.fleming@wilmerhale.com
>
> Attorneys for Respondent and Counterclaim
> Plaintiff BSB Residual Assets Trust and BSB Trust
> Company, Ltd., Trustee

Dated: April 28, 2005