**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| In the Matter of the Arbitration Between: | ) | C.A. NO. 0412646 NG |
| | ) | |
| **PT SUMOHADIWIDJOJO**, | ) | |
| | ) | |
| Applicant | ) | |
| (Respondent below) | ) | **OBJECTION TO MAGISTRATE** |
| | ) | **JUDGE DEIN'S APRIL 12, 2005** |
| and | ) | **ORDER ON RESPONDENT'S** |
| | ) | **MOTION TO VACATE OR REDUCE** |
| **BSB RESIDUAL ASSETS TRUST,** | ) | **EX PARTE ATTACHMENT** |
| **BSB TRUST COMPANY, LTD., Trustee,** | ) | |
| | ) | |
| Respondent | ) | |
| (Claimant below). | ) | |
| | ) | |

<u>**Introduction**</u>

1.      PT Sumohadiwidjojo ("PTSW"), by its undersigned counsel and pursuant to F.R.C.P. Rule 72(a) and the Stipulation of the parties dated April 15, 2005, respectfully files the within objection to the Order dated April 12, 2005 made by Magistrate Judge Dein ("April 12th Order") (Dkt. # 26), with respect to *Respondent's Motion to Vacate or Reduce Ex Parte Attachment* ("*Motion to Vacate or Reduce*"). This Objection addresses a single issue, namely, Magistrate Judge Dein's determination that the attachment obtained by PTSW to secure the anticipated judgment in this case should not include an amount for interest on the judgment.

As grounds, PTSW states as follows:

<u>**Background**</u>

2.      This proceeding involves an Application by PTSW, an Indonesian limited liability company, pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral

Awards ("New York Convention" or "Convention"), as implemented at 9 U.S.C. §§ 1 *et seq.*, the

Federal Arbitration Act ("FAA").[1]

4.    3.    PTSW seeks to confirm and have entered as a Judgment of this Court a Final

Award of the Singapore International Arbitration Centre ("SIAC") made against the Respondent,

BSB Residual Assets Trust, which is purportedly organized in the British Virgin Islands, with

BSB Trust Company, Ltd., as Trustee (the Trust and its Trustee are collectively referred to

hereinafter as "the Trust").

4.    The Trust, in its recently filed papers, concedes that it has no defenses under the

New York Convention or the FAA to this Court's enforcement of the SIAC Final Award.  In its

*Memorandum in Support of Respondent's Motion to Stay Confirmation and Enforcement of the*

*SIAC Award* (Dkt. # 30), at 8, the Trust states that:

> The enumeration of grounds for "refus[ing]" an award under Article V of the New
> York Convention is irrelevant where, as here, the respondent does not seek
> "refusal" of the award, but rather a mere deferral of its enforcement . . ..

### PTSW's Request for and Right to Interest on the SIAC Final Award

5.    PTSW originally attached $369,717.07 of the Trust's funds.  Subsequently,

however, the SIAC issued its Final Award, dated March 11, 2005, in the amount of

approximately $287,000.00.  Accordingly, in opposing the Trust's *Motion to Vacate or Reduce*

the attachment, PTSW conceded that its attachment should be reduced, as follows:

---

[1]  A copy of the New York Convention, adopted by the United Nations in 1958 and to which the United States
acceded in 1970, is attached to PTSW's Application as <u>Exhibit A</u>.  Chapter 2 of the FAA, at §§ 201-207, deals
explicitly with  Convention enforcement actions, while § 208 provides that the provisions of Chapter 1 govern to the
extent not inconsistent with Chapter 2 or the Convention.

Section 207 of the FAA provides, in pertinent part:

Within three years after an arbitral award falling under the Convention is made, any party to the arbitration
may apply to a court having jurisdiction under this chapter for an order confirming the award as against any
other party to the arbitration.

> PTSW would not object to the release of approximately $53,000.00 of the attached funds, representing the amount attached in excess of the SIAC Final Award less approximately $30,000.00, which PTSW would request be retained, over and above the amount of the Award, as security for interest under the SIAC Rules plus such costs as may be taxed by the Court in these proceedings.

*Applicant PTSW's Opposition to Respondent's Motion to Vacate or Reduce Ex Parte Attachment* (Dkt. # 18), at 6 n.10.

6.    The Trust challenged PTSW to provide the legal authority for an award of interest – a straightforward proposition that PTSW did not anticipate would be contested.  In response, PTSW provided the Court (Dkt. # 23) with the statutes and rules of the Republic of Singapore, indicating that: (a) arbitration awards, "unless the award otherwise directs, carry interest as from the date of the award and at the same rate as a judgment debt" (Singapore International Arbitration Act, Ch. 143A, Sec. 20); and (b) Singapore judgment debts carry interest "at the rate of 6% per annum . . . from the date of the judgment until the judgment is satisfied" (Singapore Supreme Court Rule O.42, r.12).

7.    In turn, the SIAC Rules, Rule 32, previously submitted to the Court provide that "[i]f the place of the arbitration is Singapore, the parties agree that the International Arbitration Act (Cap 143A) as amended from time to time is applicable."

8.    The notion that applicants to enforce a foreign arbitral award under the New York Convention and the FAA are entitled to post-award, pre-judgment interest is neither new nor controversial.   To the contrary, it appears to be a routine matter in our courts.[2]

---

[2]    *See, e.g., August AASMA v American Steamship Owners Mutual Protection and Indemnity,* 238 F.Supp.2d 918 (N.D. Ohio 2003)(New York Convention action upholding award of interest, noting that "the Court has found numerous instances in which courts have confirmed awards that assessed interest"); *International Standard Electric Corporation v. Bridas Sociedad Anonima Petrolera, Industrial Y Comercial,* 745 F.Supp. 172 (S.D.N.Y. 1990) (case under the New York Convention rejecting arguments that Court should not impose interest on foreign arbitration award from the date of the award until the date of payment, and surveying cases upholding foreign arbitration awards with interest); *Al Haddad Bros. Enterprises, Inc v. M/S Agapi, et al.,* 635 F.Supp. 205, 210  (D.Del. 1986) ("Federal courts have the power to grant . . . post-award, pre-judgment interest when enforcement of foreign arbitral awards is sought."); *Waterside Ocean Navigation Co. v. International Navigation Ltd.,* 737 F.2d 150, 153-55 (2d Cir.1984) (remanding for addition of post-award, pre-judgment interest).

9.      There can be no legitimate dispute, therefore, that PTSW is entitled to 6% interest on the SIAC Final Award as per the SIAC Rules and the statutory provisions expressly incorporated therein.

### The Magistrate Judge's April 12th Order

10.      In her April 12th Order, Magistrate Judge Dein declined to include an amount for interest in a reduced attachment, reasoning in a single sentence as follows:

> Because the amount of interest on the award is thus far so small as to be insignificant, this court declines to attach more than $287,000.

### The Error in the April 12th Order

11.      Article V of the New York Convention provides that "[r]ecognition and enforcement of [a foreign arbitral] award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof [of five enumerated defenses]," or where "[t]he subject matter of the difference is not capable of settlement by arbitration under the law of that country," or where "[t]he recognition or enforcement of the award would be contrary to the public policy of that country." As noted, the Trust does not argue that it can establish any of the enumerated defenses.

12.      In turn, § 207 of the FAA provides that: "The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the Convention," while § 13 of the FAA (made applicable to applications under the New York Convention by § 208) provides that a judgment confirming an award "shall be docketed as if it was rendered in the action."

13.     Accordingly, enforcement of foreign arbitral awards is not a matter for the exercise of broad discretion.  However, even if discretion and equitable concerns were permitted, the April 12th Order should be modified as a matter of basic fairness to PTSW.

14.     The Magistrate Judge noted in her Order, at 6, that the Trust claimed that the funds attached by PTSW constituted all of its "liquid assets."[3]  If so, and if an amount for the interest that PTSW is concededly due is not attached, then clearly such amount may never be recovered.  This Court, in fairness, should not intentionally permit a party which the Court knows will become a judgment debtor to escape the full enforcement of the judgment by intentionally permitting the party to deplete its only "liquid" assets.

15.     Of course, if PTSW is permitted promptly to obtain and enforce its judgment on the SIAC Final Award, the amount of interest accruing since March 11, 2005 would be small. However, the Trust has already indicated that it would like to turn this arbitration enforcement proceeding into a full-blown litigation matter concerning the Trust's purported $4 million claim against PTSW, and to stay PTSW's right to enforce a judgment on the SIAC Final Award for an indeterminate amount of time.

16.     Indeed, the Trust has now filed purported "counterclaims" against PTSW, *see Answer [sic] and Counterclaim [sic] of BSB Residual Asset Trust and BSB Trust Company, Ltd., Trustee*. (Dkt. # 28), and a *Motion to Stay* (Dkt. # 29).  If the Trust were granted the relief it now

---

[3]    The Trust consistently qualifies its description of the funds attached as its only "liquid" assets, clearly suggesting that the Fund has other assets which, the Trust appears to say, are "illiquid."  This distinction is unsupported by anything but the Trust's say-so.  Before basing any decision upon this factor, the Court should received *evidence* concerning the Trust's other assets and their relative liquidity – including their potential use as collateral for borrowing.  In this regard, one wonders why, if the Trust truly has a meritorious $4 million-plus secured claim against PTSW, the Trust cannot borrow the funds necessary to pursue that claim by pledging a portion of the anticipated recovery (or perhaps a percentage thereof as a contingent fee) as security.

seeks,[4] there will certainly be a substantial delay in PTSW's recovery on its judgment.  At 6%

annual interest, PTSW's $287,000 judgment on the SIAC Final Award would increase by more

than $17,000 per year.  Without an attachment in excess of $287,000 (and if the Trust is to be

believed in its description of its available assets), PTSW will in all likelihood never be able to

collect the interest on its judgment to which it is legally entitled.

### Relief Requested

17.    Wherefore, PTSW respectfully requests that the Court modify the Magistrate

Judge's April 12th Order to include $15,000 in interest, such that PTSW will have an attachment

in the total amount of $302,000.  This represents less than one half of the interest PTSW

originally requested – less than a year's interest, and thus is a compromise which offers some

measure of protection to PTSW in connection with its ability to collect upon the judgment that

the Trust concedes this Court is obligated to enter.

PTSW respectfully requests a hearing on this Objection.

Respectfully Submitted,

/s/ Richard S. Nicholson
Marjorie S. Cooke (BBO #097800)
Richard S. Nicholson (BBO #542182)
COOKE CLANCY & GRUENTHAL LLP
265 Franklin Street
Boston, MA  02110
Tel: (617) 428-6800

Dated: May 2, 2005

---

4    PTSW will vigorously oppose the Trust's effort to assert "counterclaims" and to obtain a stay, for the reasons previously set forth in its *Opposition to Motion to Vacate or Reduce Ex Parte Attachment*, to wit: (1) that counterclaims are not permitted under the New York Convention or the FAA because proceedings to enforce arbitration awards are intended to be summary in nature and are to be conducted in accordance with the rules for motion practice, 9 U.S.C. § 6; and (2) that the Trust cannot demonstrate a need for security for its purported $4 million claim against PTSW, since such claim is, according to the Trust, already secured by real estate rights in Indonesia worth far in excess of $4 million.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 2nd day of May 2005, I filed the within Objection with the

Court's CM/ECF system for service in accordance with the Court's Electronic Filing Rules.

/s/ Richard S. Nicholson
Richard S. Nicholson