# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In the Matter of the Arbitration Between: )<br>)<br>**PT SUMOHADIWIDJOJO,** )<br>)<br>    Applicant )<br>    (Respondent below) )<br>)<br>and )<br>)<br>**BSB RESIDUAL ASSETS TRUST,** )<br>**BSB TRUST COMPANY, LTD.**, Trustee, )<br>)<br>    Respondent )<br>    (Claimant below). )<br>)<br>and )<br>)<br>**CITIZENS BANK**, Trustee. )<br>) | **CIVIL ACTION NO. 04 12646 NG** |

### APPLICANT'S OPPOSITION TO RESPONDENTS' MOTION
### TO STAY CONFIRMATION AND ENFORCEMENT OF THE SIAC AWARD

Applicant, PT Sumohadiwidjojo ("PTSW"), by its undersigned counsel, hereby respectfully opposes the motion by Respondent, BSB Residual Assets Trust ("BSBRAT"), BSB Trust Company, Ltd., Trustee (BSBRAT and its Trustee are collectively referred to hereinafter as "the Trust") to stay conformation and enforcement of the SIAC Final Award.[1]

**I.   THE TRUST'S RELIANCE UPON *HEWLETT PACKARD* IS ENTIRELY MISSPLACED.**

The Trust relies for support of its motion to stay exclusively upon the First Circuit's decision in *Hewlett-Packard Company, Inc.,* 61 F.3d 101, 105-106 (1st Cir. 1995), wherein the

---

[1] PTSW has on this date filed a Motion to Strike or Dismiss, or to Stay, Respondents' Purported "Counterclaim," together with a supporting Memorandum. The Memorandum, at Section I, sets forth certain background information of this proceeding. In lieu of repeating the same here, PTSW respectfully refers the Court thereto.

Court of Appeals held that, in certain circumstances, a stay of enforcement of a foregin arbitral award might be justified. The Trust fails to acknowledge, however, the Court's clear caution that "a stay of confirmation should not be lightly granted," because delay in enforcing a foreign arbitral award undermines "[a] central purpose of the Convention – an international agreement to which the United States is only one of approximately one hundred signatories," namely, "to *expedite* the recognition of foreign arbitral awards with a minimum of judicial interference." (Emphasis added).

Although the Trust attempts to shoehorn the facts and circumstances of this case into a scenario that it claims resembles *Hewlett Packard*, in reality, this case is distinguishable from *Hewlett Packard* in virtually every critical respect. First, the Court in *Hewlett Packard* was concerned that if HP had to pay the arbitration creditors immediately, in satisfaction of an admittedly valid foreign arbitral award, then HP might be unable at a later date to collect upon its own claims against the abitration award creditor. The key point was that the arbitration creditor was otherwise *insolvent*. Thus, by staying enforcement of the arbitral award against HP, pending HP's prosecution of its claims, the Court effectively permitted the funds owed by HP under the foreign arbitral award to serve as "security" for HP's own claims. This case is entirely different.

Here, the Trust claims to hold valid and enforceable mortgages upon real property of PTSW in Indonesia. In dropping its abitration claim against PTSW in the SIAC, the Trust represented that foreclosure upon PTSW's Indonesian property would permit the Trust *fully* to recover upon its claim against PTSW.[2] Unlike *Hewlett Packard*, there is absolutely no showing in this case that the Trust needs protection against a potentially insolvent creditor. Indeed, the Trust does not even suggest that it would be unable to collect from PTSW if it was successful on

---

[2] A copy of the Trust's Application to Withdraw was attached as Exhibit 9 to the Affidavit of Alison Aubry, Esq. in Further Support of Respondent's Motion to Vacate or Reduce *Ex Parte* Attachment.

its claim. Thus, the Trust should pay PTSW as required by the SIAC Award. It can then pursue its own claim independently.

Second, in *Hewlett Packard*, it appeared to the Court of Appeals that HP had made reasonable efforts to have its claims determined together with the claims of the arbitration creditors. In stark contrast, the Trust claims that PTSW was in breach of a Loan Agreement as of December *2002*¸ yet it did not commence an arbitration until January *2004*. Similarly, during the first half of 2004, the Trust engaged in legal proceedings involving its claims against PTSW in the Indonesian Hight Court and the South Jakarta Land Office. Yet, the Trust never followed up on those proceedings by commencing a civil action in the South Jakarta District Court – as the High Court suggested should be done in May 2004. Moreover, nine months after commencing the SIAC arbitration proceeding, the Trust abruptly and unilaterally quit the arbitration, stating that it intended to commence foreclosure proceedings in the South Jakarta Land Office. However, the Trust never commenced any such proceedings.[3]

In short, none of the factors mentioned in *Hewlett Packard* are present in this case. There are no circumstances in this case that would justify a stay of an undisputed, unchallenged foreign arbitral award by a Tribunal of the Singapore International Abtiration Centre – whose jursdiction the Trust itself originally invoked. All that a stay would accomplish is to deprive PTSW of the time value of the funds it is owed by the Trust (absent a provision for retaining interest under the Court's attachment). The Court should decline to exercise its discretion to stay enforcement of the SIAC Final Award.

---

[3] The Trust argues that PTSW's attachment in this case in mid-December 2004 precluded it from commencing foreclosure proceedings in Indonesia by tying up all of its "liquid" assets. Even if that were so, and even if one believed that the Trust could not raise or borrow funds to collect upon an allegedly secured $4 million claim, it appears now that the Trust will have at least $65,000 of its funds released. The Trust does not explain why that sum would not be sufficient to permit it to proceed as it had planned to commence foreclosure proceedings in Indonesia. In any event, the Trust's professed desire to litigate its claim in this Court, seeking a judgment which it will have to bring to Indonesia for enforcement anyway, is a very unwise use of its limited resources.

**II.    THE TRUST WAIVED ITS RIGHT TO SEEK A STAY.**

As noted, the Trust invoked the juridiction of the Singapore International Arbitration Centre in a purported effort to resolve its dispute with PTSW. The SIAC Rules, at Rule 28.8.,[4] provide that "[b]y agreeing to have an arbitration under these Rules, the parties *undertake to carry out the award without delay*." (Emphasis added). In making this undertaking, which clearly was for the benefit of the opposing party, the Trust waived the relief it seeks here, that is, a stay that would *delay* the carrying out of the SIAC Final Award.

In this regard, the Trust could have asked the SIAC Tribunal to overrride Rule 28.8 and to stay its own Final Award while the Trust pursued claims against PTSW. The Trust failed to make such a request, and for good reason – it would have been denied. That is, in making its Final Award, the SIAC Tribunal expressly *forbid* the Trust from reinstating its arbitration claims against PTSW "unless and until the Respondent's costs stated above are paid in full." The SIAC Tribunal obviously wished to induce the Trust to comply with SIAC Rule 28.8 and make prompt payment to PTSW.

In sum, if this Court is to remain true to the purpose and spirit of the New York Convention and the FAA, and afford proper respect to the SIAC Tribunal and its Final Award, it should hold the Trust to its undertaking promptly to carry out the SIAC Final Award. All that is required is an order confirming judgment on PTSW's unopposed Application, entry of judgment,[5] and the release of the Trust's attached funds in satisfaction thereof. These

---

[4] A copy of the Rules was previously submitted to the Court as an exhibit to the Affidavit of Richard S. Nicholson, Esq., dated March 17, 2005, which was submitted in connection with PTSW's Opposition to Respondent's Motion to Vacate or Reduce Ex Parte Attachment.

[5]    Section 13 of the FAA, 9 U.S.C. § 13, made applicable to enforcement proceedings under the New York Convention and the FAA by 9 U.S.C. § 208, provides, in pertinent part, that:

> The party moving for an order confirming . . . an award shall, at the time such order is filed with the clerk for entry of judgment thereon, also file [certain additional papers].

4

proceedings should proceed expeditiously per the design of the New York Convention and the FAA.

### III.   ANY STAY OF THESE PROCEEDINGS SHOULD STAY <u>ALL</u> PROCEEDINGS.

In PTSW's Motion to Strike or Dismiss, or to Stay, Respondents' Purported "Counterclaim," and the accompanying Memorandum ("Motion and Memorandum"), PTSW has argued that if the purported "counterclaim" is not dismissed, then it should be stayed in light of a concurrent lawsuit commenced by PTSW in the South Jakarta, Indonesia, District Court. That suit involves the same parties and the same issues as the Trust seeks to litigate in this Court. In lieu of repeating the arguments made in the Motion and Memorandum, PTSW respectfully refers the Court thereto. Suffice it to say, however, that if PTSW's Application is stayed, in all fairness and in the interests of judicial efficiency, this entire proceeding should be stayed while the Trust and PTSW take their dispute involving Indonesian contract, agrarian, agency, property and procedural law to the courts and agencies of Indonesia.

WHEREFORE, PTSW respectfully requests that the Trust's Motion to Stay be denied, and that the Court grant such other and further relief as it deems just and proper.

---

The judgment shall be docketed as if it was rendered in an action.

The judgment so entered shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered.

        Respectfully submitted,

        **PT SUMOHADIWIDJOJO**, Applicant

        By its Attorneys,

        /s/ Richard S. Nicholson
        Marjorie Sommer Cooke (BBO # 097800)
        Richard S. Nicholson (BBO # 542182)
        COOKE CLANCY & GRUENTHAL LLP
        265 Franklin Street
        Boston, MA 02110
        (617) 428-6800

Dated: May 19, 2005

### CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of May, 2005, I filed the within motion with the Court's CM/ECF system for service in accordance with the Court's Electronic Filing Rules.

        /s/ Richard S. Nicholson
        Richard S. Nicholson