UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In the Matter of an Arbitration Between:<br><br>PT SUMOHADIWIDJOJO,<br><br>　　　　Applicant and<br>　　　　Counterclaim Defendant<br>　　　　(Respondent below)<br><br>and<br><br>BSB RESIDUAL ASSETS TRUST,<br>BSB TRUST COMPANY, LTD., Trustee,<br><br>　　　　Respondent and<br>　　　　Counterclaim Plaintiff<br>　　　　(Claimant below).<br><br>CITIZENS BANK<br><br>　　　　Trustee. | CIVIL ACTION NO. 04 12646 NG<br><br>REPLY MEMORANDUM IN SUPPORT OF RESPONDENT'S MOTION TO STAY CONFIRMATION AND ENFORCEMENT OF THE SIAC AWARD |

Respondent BSB Residual Assets Trust and BSB Trust Company, Ltd., Trustee (collectively "BSB") submits this reply memorandum in support of its motion to stay confirmation and enforcement of the arbitral award of the Singapore International Arbitration Centre ("SIAC Award") and in response to the opposition filed by Applicant PT Sumohadiwidjojo ("Opposition" and "PTSW," respectively).

## INTRODUCTION

In its order on BSB's motion to vacate the *ex parte* attachment obtained by PTSW in connection with its application to enforce the SIAC Award, this Court (Dein, U.S.M.J.) stated that "the evidence that BSB submitted concerning the factual background of this dispute demonstrates that a stay of enforcement of the attachment in order to afford BSB an opportunity

to pursue its substantive claims against PTSW and to resolve its disputed right to a setoff may be appropriate." Order on Respondents' Motion to Vacate or Reduce Ex Parte Attachment (Apr. 12, 2005) ("April 12 Order") at 10-11 (citing *Jugometal v. Samincorp, Inc.*, 78 F.R.D. 504, 506-07 (S.D.N.Y. 1978)). This Court also concluded that it "would have the authority to grant … a stay upon request by BSB." *Id.* (citing *Hewlett-Packard Co., Inc. v. Berg*, 61 F.3d 101, 105 (1st Cir. 1995)). Accordingly, BSB moved for a stay of confirmation and enforcement of the SIAC Award on the same day that it filed its substantive counterclaim against PTSW ("Counterclaim").

The facts before this Court are the same as the Court recited in its April 12 Order and have been further amplified by BSB's Counterclaim. *See* Counterclaim ¶¶ 8-39. PTSW has submitted no evidence regarding its debt to BSB that could alter this Court's original statement regarding the appropriateness of a stay. PTSW's assertion that it apparently commenced a "concurrent lawsuit" in Indonesia the day after BSB filed its Counterclaim, Opposition at 5, is irrelevant to the question whether confirmation of the SIAC Award should be stayed pending resolution of the full dispute between the parties. If anything, as explained in Part III below, PTSW's Indonesian "lawsuit" *supports* the entry of a stay by revealing the absurdity of PTSW's position on the merits and confirming BSB's substantial likelihood of prevailing.

I.   **A STAY OF ENFORCEMENT PENDING RESOLUTION OF BSB'S SUBSTANTIVE CLAIM IS APPROPRIATE BECAUSE, AS IN *HEWLETT-PACKARD*, THE ARBITRATION DID NOT RESOLVE THE PARTIES' FULL DISPUTE ON THE MERITS**

BSB's Counterclaim is "closely related" to PTSW's claim under the SIAC Award, since both arise from BSB's efforts to obtain the benefit of the parties' commercial bargain. *Hewlett-Packard*, 61 F.3d at 105. PTSW fastens on the Court of Appeals' statement that a stay of confirmation of an arbitral award "should not be lightly granted." Opposition at 2 (quoting *Hewlett-Packard*, 61 F.3d at 106). BSB agrees. In most confirmation proceedings, stays of

-2-

enforcement are inappropriate, since the arbitration award resolves the parties' claims on the merits.  In some unusual cases, however, the arbitral award fails to resolve important portions of the parties' dispute, such that enforcing the partial award would cause substantial harm to one party's ability to obtain a full determination of its rights.  That was the case in *Hewlett-Packard*, and it is the case here.

PTSW's attempts to distinguish *Hewlett-Packard* fail.  Whether PTSW is a "potentially insolvent creditor" or not (Opposition at 2) is irrelevant.  *Hewlett-Packard* treated the creditor's insolvency as a "prudential argument" justifying a stay in that case, but it nowhere suggested that a court could not use its "discretion to defer proceedings for prudential reasons" in circumstances other than a creditor's insolvency.  61 F.3d at 105.  Here, several facts warrant the exercise of this Court's discretion to stay enforcement of the SIAC Award: the limited nature of the Award itself; the pendency of BSB's Counterclaim in this Court; the uncontradicted evidence that BSB's recovery on its Counterclaim will significantly outweigh any amount due under the SIAC Award; PTSW's pattern and practice of obstructing resolution of the merits of the parties' dispute; and BSB's inability to press its claim in *any* court if forced to make a premature payment on the SIAC Award prior to resolution of its substantive claims against PTSW.  These factors clearly support the grant of a stay in these circumstances.

PTSW's suggestion (Opposition at 3) that BSB has not sought to have all claims resolved "in one proceeding at the same time," 61 F.3d at 105, defies comprehension.  BSB has consistently sought the efficient resolution of the parties' dispute.  PTSW eschewed such a comprehensive resolution by first procuring an improper *ex parte* order from the South Jakarta District Court in October 2003.  BSB began the SIAC arbitration, with full and proper notice to PTSW, shortly thereafter in order to vindicate the rights that PTSW had unfairly and unlawfully

violated.  However, PTSW immediately raised numerous procedural objections to the arbitral panel's power to address the merits of the parties' dispute and to issue an award that would comprehensively address the parties' rights and obligations with respect to the parties' commercial arrangement.  As soon as BSB's rights were restored by the High Court of Jakarta and the South Jakarta land office, BSB informed the SIAC Tribunal that BSB intended to have its claims decided in a single action (foreclosure in Indonesia).  PTSW immediately frustrated BSB's attempt to resolve the parties' dispute in Indonesia, however, by freezing BSB's assets in this Court *the very day after the SIAC Award was rendered*.  BSB was forced, not by its own choice, but by PTSW's unilateral action, to litigate in this Court.  In order to minimize cost and hasten resolution of the parties' dispute, BSB has now filed its Counterclaim in this forum, which PTSW invoked.

     BSB has thus consistently sought to resolve the parties' dispute in one single proceeding in one single forum.  It is PTSW that has obstructed this effort by opposing the SIAC Tribunal's jurisdiction and then opening new fronts, first by filing its claim in this Court, and second by apparently commencing a "concurrent lawsuit" in Indonesia, without any prior notice to BSB, on the day after BSB filed its Counterclaim in this Court.  Opposition at 5.  This case is therefore not materially different from the situation the Court of Appeals confronted in *Hewlett-Packard*.

     Try as PTSW might, it cannot change the SIAC Award into an ordinary arbitral decision resolving a commercial dispute on the merits.  Like the unusual award in *Hewlett-Packard*, and unlike most arbitral awards, the SIAC Award left one of the parties' principal claims unresolved despite that party's efforts to secure a full adjudication of its rights.  These rare and limited circumstances justify a stay of enforcement here.

## II. NOTHING IN THE SIAC AWARD OR RULES PREVENTS ISSUANCE OF A STAY OF ENFORCEMENT

PTSW misleadingly suggests that BSB "waived" its right to seek a stay of confirmation pending resolution of its substantive claim. Opposition at 4. BSB has "waived" nothing. Rather, BSB sought the stay at the first logical opportunity: on the same day that it filed its Counterclaim in this Court.

PTSW appears to contend that the SIAC Tribunal somehow precluded BSB from seeking a stay of enforcement of the SIAC Award pending resolution of the merits of the parties' dispute. PTSW is incorrect. While the SIAC Award makes the reinstatement of *arbitral* proceedings contingent on payment under the Award, it says nothing about *non-arbitral* proceedings. *See* SIAC Award ¶ 13(f). This dichotomy was not accidental. The SIAC Tribunal was well aware that further non-arbitral proceedings were essential to the resolution of BSB's claims against PTSW; indeed, that was the precise reason that BSB withdrew its arbitration claim. The SIAC Tribunal conspicuously did *not* state that BSB was required to make payment on the SIAC Award before beginning such further proceedings. Neither the SIAC Tribunal nor BSB could have foreseen that PTSW's machinations would result in the assertion of BSB's substantive claim as a Counterclaim in this Court, but the SIAC Award places no limitation on the venue (provided it is non-arbitral) in which BSB may pursue its substantive claim prior to making payment on the SIAC Award.[1]

---

[1] Rule 28.8 of the SIAC Rules, which states that parties should carry out awards without delay, cannot be read as foreclosing legitimate efforts to resolve the parties' mutual obligations at the same time, rather than piecemeal. Furthermore, SIAC Rule 34.5 provides that, "in the event of conflict between these Rules and the terms of any contract entered into between the parties, the terms of the said contract shall prevail." In this case, the parties' Loan Agreement expressly provides that BSB "may at any time set off any claims of [PTSW] against [BSB] … in or towards satisfaction of any sum whether or not contingent and whether or not due and payable to [BSB] under or in connection with this Loan Agreement." Counterclaim Ex. C, ¶ 17. A stay of enforcement of the SIAC Award is a necessary step in BSB's pursuit of its contractual right of set off. If BSB is made to pay under the SIAC Award before its Counterclaim is resolved, its right of setoff would be meaningless. Thus, even if SIAC Rule 28.8 did have any bearing on BSB's right to seek a stay of confirmation of the SIAC Award, the Loan Agreement would override it by operation of SIAC Rule 34.5.

### III. PTSW'S COMMENCEMENT OF A "CONCURRENT LAWSUIT" IS IRRELEVANT TO THIS MOTION AND CONFIRMS THE VALIDITY OF BSB'S COUNTERCLAIM

Finally, PTSW asserts that it has commenced a "concurrent lawsuit" in the South Jakarta District Court, the same court where PTSW obtained the improper *ex parte* order that began this lengthy dispute and that was later vacated by the High Court of Jakarta. Opposition at 5. According to the document entitled "Lawsuit," which PTSW filed as Exhibit B to its motion to strike BSB's Counterclaim ("PTSW Lawsuit"), PTSW commenced its concurrent case the day *after* BSB filed its Counterclaim in this Court. Even though PTSW forced BSB into litigation in this Court by obtaining an *ex parte* attachment of BSB's assets in December 2004, PTSW now appears to contend that this Court should stay the litigation that PTSW began in favor of proceedings filed barely one month ago.

PTSW's "concurrent lawsuit" has no bearing on the matter currently before the Court; a stay of enforcement of the SIAC Award is appropriate regardless of whether PTSW has begun duplicative and vexatious litigation in another jurisdiction. BSB will respond in due course to PTSW's request that this Court stay BSB's Counterclaim, *see* Opposition at 5, which is the subject of PTSW's separate motion to dismiss.

For present purposes, however, it bears noting that PTSW's purported Indonesian lawsuit admits several of the essential facts of BSB's Counterclaim. For example, PTSW admits that the Parties "have made and signed a Loan Agreement … dated February 17th, 1998" and that the Loan was secured by an interest in land. PTSW Lawsuit ¶¶ 1, 6. PTSW also admits that the principal amount of the loan is $3,060,000 (U.S.), as alleged by BSB, and that $144,960 (U.S.) of that amount was used to purchase shares in Kalimantan Investment Corporation pursuant to the Loan Agreement. *See id.* ¶ 1; Counterclaim ¶ 13. PTSW also admits that it has not repaid

the full amount of the loan; it contends rather that it has repaid only $168,809.42 (U.S.). *See* PTSW Lawsuit ¶ 4.

PTSW's principal argument in its Indonesian lawsuit appears to be that it "never received" the "remaining loan amounting to US$ 2,915,040.00." PTSW Lawsuit ¶ 3. PTSW's argument is, of course, absurd: the loan of $2,915,040 was the consideration for BSB's transfer to PTSW of BSB's rights to the Mezzanine Floor of the S. Widjojo Centre, which PTSW unquestionably received. *See* Counterclaim ¶¶ 13-14; *see also id.* Exs. B & C. PTSW's suggestion appears to be that BSB gave PTSW its rights to the Mezzanine Floor for nothing, a position that makes no commercial sense and is squarely contradicted not only by the parties' agreements, but also by PTSW's own statements and actions acknowledging its debt to BSB. *See* Counterclaim ¶¶ 12-22.

The weakness of PTSW's argument shows that BSB has a substantial likelihood of success on the merits of its Counterclaim, and that the amount of PTSW's unpaid debt to BSB under the Loan Agreement—now exceeding $4 million in principal and accrued interest, *see* Counterclaim ¶ 34—will significantly exceed any amount due to PTSW under the SIAC Award. The PTSW Lawsuit also shows that PTSW's major motivation was not to assert a meaningful defense on the merits of its debt to BSB, but rather to evade the jurisdiction of this Court despite having originally invoked it. PTSW's timing confirms this: had PTSW truly wished to resolve the parties' dispute, it could have filed an Indonesian lawsuit at any time after the High Court of Jakarta vacated the *ex parte* decision of the South Jakarta District Court on the grounds that any lawsuit by PTSW must be brought, if at all, as a claim "between the parties that have mutual interests," that is, as an *inter partes* "formal civil claim" between PTSW and BSB. Counterclaim Ex. F. The fact that PTSW waited until the day *after* BSB filed its Counterclaim in this Court

-8-

indicates that PTSW is not interested in adjudication of the parties' rights and obligations, but rather (as has been PTSW's consistent strategy) in obstructing BSB's efforts to assert its rights in *any* forum.

All prospects of a fair and lawful resolution of the parties' dispute will disappear if PTSW is permitted to collect on the SIAC Award prior to resolution of the parties' dispute. Equity does not support allowing PTSW to use BSB's assets to fund its devious litigation tactics and continued evasion of its contractual obligations. At the very least, a stay of enforcement of the SIAC Award pending resolution of BSB's substantive claim against PTSW is necessary to maintain the *status quo*.

## CONCLUSION

For the foregoing reasons and for the reasons set out in BSB's opening memorandum, the Court should stay confirmation and enforcement of the SIAC Award pending adjudication of BSB's substantive claim against PTSW.

                                            Respectfully submitted,

                                            _/s/ Mark C. Fleming__
                                            Richard A. Johnston (BBO # 253420)
                                            Mark C. Fleming (BBO # 639358)
                                            WILMER CUTLER PICKERING
                                            HALE AND DORR LLP
                                            60 State Street
                                            Boston, MA  02109
                                            (617) 526-6000
                                            richard.johnston@wilmerhale.com
                                            mark.fleming@wilmerhale.com

                                            Attorneys for Respondent and Counterclaim
                                            Plaintiff BSB Residual Assets Trust and BSB Trust
                                            Company, Ltd., Trustee

Dated: May 31, 2005

US1DOCS 5125695v3